# IN THE UNTED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RICHARD LAWRENCE HIGGS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:13-cv-00278-FJG |
| DIVERSIFED CONSULTANTS, INC. | ) |
| Defendant. | ) |

## ORDER

Pending before the Court is Defendant Diversified Consultants, Inc.'s Motion for Summary Judgment (Doc. No. 18).

## I. Background/Facts

On March 19, 2013, plaintiff filed his Complaint (Doc. No. 1) in the United States District Court for the Western District of Missouri. On April 12, 2013, defendant filed an answer to plaintiff's complaint.

Plaintiff Richard Higgs ("Higgs" or "Plaintiff") alleges in his complaint that Defendant Diversified Consultants, Inc. ("Diversified" or "Defendant") violated the FDCPA during certain collection telephone calls Defendant made arising out of Plaintiffs' failure to pay delinquent debt. See (Doc. No. 18, p. 1). The parties stipulate that at some point in the past, Plaintiff retained an account with AT&T Mobility ("AT&T Mobility Account"), and at some point, the account was not paid and went into default. See (Doc. No. 23, ¶ 4). Once the account went into default, it was turned over to Defendant, who is in the business of debt collections. (Doc. No. 23, ¶ 3).

In the year prior to the filing of this lawsuit, Defendant made debt collection calls to Plaintiff. See (Doc. No. 23, ¶ 6). Defendant spoke to Plaintiff on two occasions—once on January 21, 2013 and once more on February 7, 2013. (Doc. No. 23, ¶ 7). The phone calls that occurred during the period between the first and second occasions Defendant spoke to Plaintiff are the sole basis for the cause of action. (Doc. No. 23, ¶ 30).

During the January 21, 2013 call, a recording reflects that an operator for Defendant contacted Plaintiff "in regards to [his] AT&T Mobility account." (Pye Dep. 11:17:12:19; Doc. No. 18, p. 3). Plaintiff responded that he did not "have any money right now," and that he "can't do anything." (Doc. No. 23, ¶ 9). Defendant notified Plaintiff the status of his account would change to CNP (cannot pay), and that "unfortunately the collection activity will continue." (Doc. No. 23, ¶ 9). Between January 22, 2013 and February 6, 2013, Defendant made a total of 36 phone calls to Plaintiff to attempt to collect the debt, with no more than four calls a day, averaging 2.25 calls per day over the 16-day period. See (Doc. No. 23, ¶ 26). On February 7, 2013, Plaintiff made an inbound call requesting Defendant stop calling and opining that he would not pay. (Doc. No. 23, ¶ 27-28). Subsequent to Plaintiff's request on February 7, 2013, Defendant ceased calling Plaintiff. (Doc. No. 23, ¶ 29).

Plaintiff asserts defendant violated 15 U.S.C. §§ 1692d and 1692d(5), arguing that the calls placed between January 21, 2013 and February 7, 2013, were made with the intent to harass, oppress, or abuse in the connection with the collection of debt. (See Doc. No. 24, p. 6). Defendant maintains in the motion for summary judgment (Doc. No. 18), however, that (1) the purpose of the calls during the period was "[t]o find

out when [Plaintiff] could pay, to attempt to collect the debt." Pye Dep. 17:23-18:4; Doc. No. 18, ¶ 9, 14), (2) Plaintiff failed to either refute the debt or request communications to cease during the period of alleged harassment; (3) the volume of Defendant's calls to Plaintiff were well within the bounds of an acceptable volume; and (4) during the two occasions Defendant spoke with Plaintiff, the recordings of the calls reflect there was nothing harassing or abusive regarding the substance of the calls.

## II.     Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering summary judgment, a district court must view the facts "in the light most favorable to the nonmovant, giving it the benefit of all reasonable inferences to be draw from the facts." Woodsmith Publ'g Co. v. Meredith Corp., 904 F.2d 1244, 1247 (8th Cir.1990). The moving party is entitled to summary judgment as a matter of law if they can carry the burden of establishing "there is no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986).

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). Summary judgment is not appropriate if a reasonable jury could find for the nonmoving party. Woodsmith, 904 F.2d 1244; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III. Defendant Diversified Consultants, Inc.'s Motion for Summary Judgment (Doc. No. 18)

Defendant asserts that summary judgment in its favor is appropriate, as Plaintiff has failed to produce any evidence demonstrating Defendant's intent to harass, oppress, or abuse in the connection with the collection of debt under 15 U.S.C. §§ 1692d and 1692d(5). Plaintiff asserts that any calls made subsequent to his statement that he "could not pay" were made with the intent to harass, oppress, or abuse. Defendant argues that no intent to harass, oppress, or abuse exists because the debt collector was only attempting to find out when Plaintiff could pay to fully collect on the debt owed.

The standard to be applied regarding the alleged cause of action under 15 U.S.C. 1692d is objective, based on the "unsophisticated customer" perspective. Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir.2002). The "unsophisticated customer" test protects customers of below average sophistication or intelligence, but includes an objective element of reasonableness. VanHorn v. Genpact Services, LLC, 2011 WL 4565477, Case No. 09–1047–CV–S–GAF at *5 (W.D. Mo. Feb. 14, 2011). This court has previously denounced a solely subjective standard offered by the plaintiff on the grounds that it does not comport with the language or purpose of the FDCPA or existing case law. Id.

In Pace v. Portfolio Recovery, 872 F.Supp.2d 861 (W.D. Mo. 2012) this court stated, "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury, yet, not all circumstances of persistently calling a debtor constitute harassment." Id. at 864 (quoting VanHorn, 2011 WL 4565477 at *3). In discussing Section 1692d, Pace stated that a reading of the statute's entirety reveals "absent

egregious conduct or intent to annoy, abuse, or harass, a debt collector does not violate the FDCPA by persistently calling in an attempt to reach a debtor regarding a debt owed and due." Id. at 865. The debtor has the burden to establish that the debt collection agency acted with intent to harass and annoy, as would violate the Fair Debt Collection Practices Act (FDCPA). Id.

Intent to annoy, abuse, or harass is normally a question for the jury, however it is not uncommon for a court to rule on a motion for summary judgment. See Pace, 872 F.Supp. at 864. A genuine issue of a material fact of intent has been found in circumstances where the debt collector made over ninety calls to debtor's home, called back immediately after the debtor hung up, failed to identify itself during these calls, and the debt collector repeatedly called the debtor even after receiving a "cease and desist" letter from debtor. VanHorn, 2011 WL 4565477 at *3 (citing Fausto v. Credigy Sevrs. Corp., 598 F.Supp.2d 1049 (N.D.Cal.2009)). On the other hand, courts have found no genuine issue of material fact of intent to annoy, abuse, or harass exists when the debt collector made all calls during the protected calling hours[1], and on one occasion, the debtor requested the debt collector not call. VanHorn, 2011 WL 4565477 at *4. Summary judgment has also been granted to the defendant when the debt collector made fifty-seven phone calls to debtor, including seven in one day, because the debt collector never spoke with the debtor, was never asked to cease calling, and never called back on the same day a voice message was left for debtor. VanHorn, 2011 WL 4565477 at *4 (citing Tucker v. CBE Grp., Inc., 710 F.Supp.2d 1301 (M.D. Fla. 2010). See also Durthaler v. Accounts Receivable Management, Inc., 854 F.Supp.2d 485, 489-

---

[1] Protected calling hours are after 8 a.m. and before 9 p.m., local time at the consumer's location, absent knowledge of circumstances to the contrary. 15 U.S.C. § 1692c(a)(1).

92 (S.D. Ohio 2012) (collecting cases). Even in scenarios where the plaintiff had orally requested multiple times that the defendant cease calls, because the plaintiff did not identify himself or send a cease and desist letter comporting with the defendant's policy, the defendant's activity was found insufficient to rise to the level of harassment under Section 1692d. Vanhorn, 2011 WL 4565477 at *4.

Plaintiff's claim rests on the allegation that any calls made subsequent to his statement on January 21, 2013 that he "does not have any money right now" were made with the natural consequence to harass a person in connection with the collection of a debt. Defendant, however, notes that courts typically consider two types of evidence as intent to harass regarding § 1692d(5): (1) where the plaintiff has shown that he asked the collection agency to stop calling or has informed the collection agency that it has the wrong number, and the collection agency nevertheless continued to call the plaintiff, and (2) where the volume of and pattern of the calls may themselves evidence an intent to harass. Hendricks v. CBE Grp., 891 F. Supp. 2d 892, 896 (N.D. Ill. 2012). Although Plaintiff did allude to not being able to pay his bill, he did not explicitly ask Defendant to stop calling, nor does Plaintiff allege sending a written letter requesting the calls cease. In fact, Plaintiff was aware his statements during the call on January 21, 2013 would not prevent him from receiving calls in the future, as the operator informed him that "unfortunately, the collection process will continue." The court finds that viewed in the light most favorable to Plaintiff, his statements were at best a conclusion he currently could not pay – not a request for the calls to cease – which does not prevent the debt collector from attempting to determine when Plaintiff could pay the debt under § 1692d.

6

Where the volume and pattern of the calls themselves has been found as evidence to harass under § 1692d(5), the calls in those scenarios were typically made early in the morning, late in the evening, in quick succession, or excessively in one day. VanHorn, 2011 WL 4565477 at *4 (citing Fausto v. Credigy Sevrs. Corp., 598 F.Supp.2d 1049 (N.D.Cal.2009)). According to the call logs and stipulated facts, Defendant called Plaintiff an average of 2.25 times per day, did not call more than four times in one day, and the calls were not alleged to be outside the protected calling periods. As discussed above, this court, as well as others, has found even greater volumes insufficient to support a claim that this constituted harassment. Plaintiff has not shown egregious conduct in Defendant's debt collection actions.

Applying the unsophisticated customer standard and viewing the facts in the light most favorable to Plaintiff, the Court finds that no reasonable jury could find that Defendant violated 15 U.S.C. §§ 1692d or 1692d(5). Therefore, defendant's motion for summary judgment should be granted as a matter of law.

## IV. Conclusion

Therefore, for the foregoing reasons, Defendant Diversified Consultants, Inc.'s Motion for Summary Judgment (Doc. No. 18) is **GRANTED.** All remaining pending motions are **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Date: April 8, 2014　　　　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　United States District Judge